UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Timothy McLaughlin, <br><br> *Plaintiff,* <br><br> *v.* <br><br> Johnson & Johnson Consumer, Inc., Johnson & Johnson, and Costco Wholesale Corporation, <br><br> *Defendants.* | Case No. _____ <br><br> COMPLAINT AND <br> DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Timothy McLaughlin, who files this Class Action Complaint against the below-enumerated Defendants as alleges and avers as follows.

### I.   INTRODUCTION

1.     This case arises from adulterated, misbranded, and unapproved sunscreen and after sun care products that were designed, manufactured, marketed, distributed, packaged, and/or sold by Defendants (identified and defined *infra*) in the United States.  The specific sunscreen products currently include all aerosol sunscreen products manufactured by Johnson & Johnson and its subsidiaries, Neutrogena and Aveeno, which were recalled on July 14, 2021[1] (collectively, the "Sunscreen" Products and "After-Sun Care" Products).  These Sunscreen Products are not merchantable, and are not of the quality represented by Defendants named herein.

2.     Defendants' Sunscreen and After-Sun Care Products contain dangerously high levels of benzene, a hazardous genotoxic class I human carcinogen.  These dangerously high levels of benzene are not disclosed by Defendants, and were only discovered very recently when a third-

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/johnson-johnson-consumer-inc-issues-voluntary-recall-specific-neutrogenar-and-aveenor-aerosol

party pharmacy tested Defendants' Sunscreen and After Sun Care Products.

3.      Sunscreen and After-Sun Care Products in the United States are considered drugs, and are regulated by the Unites States Food and Drug Administration ("FDA").    As such, these products, including Defendants' Sunscreen and After-Sun Care Products, must comply with the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, the FDA regulations and guidance promulgated thereunder, as well as analogous state statutory and common law schemes pertaining to the safety, quality, and sale of OTC drugs.

4.      Defendants sought to profit at consumers' expense by false labelling and selling Sunscreen and After-Sun Care Products that contained undisclosed levels of benzene, a known human carcinogen.  Benzene is typically used in the manufacture of gasoline and other industry chemicals or textiles.  Because of its genotoxic and carcinogenic potential, in 2011 the United States Environmental Protection introduced regulations that lowered benzene content in gasoline.[2] Meanwhile, Plaintiff and other class members directly unknowingly purchased Defendants' Sunscreen and After-Sun Care Products to apply the product to their bodies from ultraviolet rays and the damage to bodies that they cause, including cancer, when the products contained undisclosed levels of benzene impurities well beyond permissible levels  set by the EPA and other federal regulatory agencies.

5.      Plaintiff brings this action for economic damages and injunctive relief on behalf of all persons who paid for Defendants' adulterated, misbranded, and/or unapproved Sunscreen and After-Sun Care Products illegally manufactured, sold, labeled, marketed, and distributed in the United States.  Defendants' Sunscreen and After-Sun Care Products contained high levels of benzene.  Defendants' Sunscreen and After-Sun Care Products were of lesser quality and were

---

[2] EPA Gasoline Mobile Source Air Toxics, *available at* https://www.epa.gov/gasoline-standards/gasoline-mobile-source-air-toxics (last visited July 15, 2021).

adulterated, misbranded, and/or unapproved (and thereby rendered worthless) through unacceptable and undisclosed levels of benzene. At the same time other sunscreen and after-sun care products have been safely and successfully marketed, sold and used which do not contain unacceptable levels of carcinogens.

6.     At all times during the period alleged herein, Defendants represented and warranted to consumers and others that their Sunscreen and After-Sun Care Products were comprised of the materials disclosed on the products' labels, and were merchantable and fit for use. Yet, Defendants knowingly, fraudulently, and/or negligently manufactured, labeled, marketed, and/or sold their Sunscreen and After-Sun care Products that contained extremely high levels of the carcinogenic substance benzene. Defendants have been unjustly enriched through the sale of these knowingly adulterated and/or misbranded products. Defendants' conduct also constitutes actionable fraud, consumer fraud, negligence, and other violations of law as set forth herein.

## II.     PARTIES

7.     Plaintiff Timothy McLaughlin is a resident of Fulton County, Georgia. During the class period, Plaintiff paid money for one or more of Defendants' Sunscreen and After-Sun Care Products. Specifically, Plaintiff purchased at least one or more of the following Sunscreen Products, manufactured and sold at retail to Plaintiff and other consumers as follows: Neutrogena Beach Defense, Lot No. 28119E23R. Defendants expressly and impliedly warranted to Plaintiff that the Sunscreen and After-Sun Care Products that Plaintiff purchased were merchantable and of the represented quality. But in fact, Plaintiff purchased product that was not of the represented merchantability or quality. Plaintiff would not have paid money for Defendants' Sunscreen Products but for their concealment of the benzene levels in those products; indeed, as the benzene levels were above the acceptable levels mandated by the EPA, CDC, OSHA, and analogous state laws, Defendants' Sunscreen Products could not be sold in the United States (including Georgia

or New Jersey) in the first place.

8.      Defendant Johnson & Johnson Consumer, Inc. is a Delaware corporation with its principal place of business in New Jersey.  At all times material to this action, Johnson & Johnson Consumer, Inc. has been engaged in the manufacture, sale, marketing, and/or distribution of adulterated and/or misbranded Sunscreen Products in the United States, including but not limited to Georgia and New Jersey.

9.      Defendant Johnson & Johnson is a New Jersey Corporation with its principal place of business in New Jersey. Defendants Johnson & Johnson is the parent corporation of Johnson & Johnson Consumer, Inc. and through its subsidiary has been engaged in the manufacture, sale, marketing, and/or distribution of adulterated and/or misbranded Sunscreen Products in the United States, including but not limited to Georgia and New Jersey.

10.     Upon information and belief, Neutrogena Corp. is a wholly owned subsidiary of Defendant Johnson & Johnson Consumer, Inc. and has its principal place of business in California.

11.     Upon information and belief, Aveeno is a wholly owned subsidiary of Defendant Johnson & Johnson Consumer Inc. and has its principal place of business in New Jersey.

12.     Johnson & Johnson Consumer, Inc., Johnson & Johnson, Neutrogena Corp., and Aveeno are collectively referred to throughout this complaint as "J&J."

13.     Defendant Costco Wholesale Corporation ("Costco") a Washington corporation with its principal place of business in Washington.  At all times material to this action, Costco has been engaged in the marketing or sale of adulterated and/or misbranded Sunscreen Products, including the product purchased by Plaintiff, in the United States, including but not limited to in Georgia and New Jersey.

14.     Upon information and belief, one or more other entities manufactured, distributed, marketed, and/or sold Sunscreen Products during the class period.  The true names, affiliations,

and/or capacities of John Doe Defendants are not presently known.  However, each John Doe proximately caused damages to Plaintiff and other class members as alleged herein, and each John Doe is liable to Plaintiff and other class members for the acts and omissions alleged below as well as the resulting damages. Plaintiff will amend complaint to allege the true names and capacities of the John Does when evidence reveals their identities.

### III.   JURISDICTION AND VENUE

15.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action.

16.     This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1407, and because Defendants have sufficient minimum contacts in New Jersey, and because Defendants have otherwise intentionally availed themselves of the markets within New Jersey through their business activities, such that the exercise of jurisdiction by this Court is proper and necessary.

17.     Venue is proper in this District because Plaintiff resides in this District, 28 U.S.C. § 1391(b)(1); "a substantial part of the events or omissions giving rise to the claim occurred" in this District, 28 U.S.C. § 1391(b)(2); and Defendants are subject to the personal jurisdiction of this Court, 28 U.S.C. § 1391(b)(3).

### IV.   FACTUAL ALLEGATIONS

#### A.   Regulation of Over-The-Counter (OTC) Sunscreen and After-Sun Care Products

18.     The FDA considers Sunscreen Products to be over-the-counter (OTC) drugs and/or

cosmetics and regulates them as such.[3]

19.     As drugs and/or cosmetics, Sunscreen and After-Sun Products, *inter alia*, must meet prescribed standards for, *inter alia*, safety and efficacy; have standardized, FDA-approved drug labeling (*see, e.g.*, 21 C.F.R. 201.66); and are subject to current Good Manufacturing Practices (cGMP) regulations and state-law analogues.

20.     Sunscreen Product manufacturers generally do not require FDA approval to begin manufacturing, marketing, selling, or distributing OTC Sunscreen Products.[4]

21.     Just like pharmaceutical drugs and medical devices, sunscreen manufacturers must comply with 21 CFR part 201 and 21 CFR 330.1, requirements for adverse event reporting for OTC drugs in the Federal Food, Drug, and Cosmetic Act (FD&C Act) (21 U.S.C. 379aa) (serious adverse event reporting), and provisions of the FD&C Act addressing adulteration.[5]

22.     Sunscreen Products must also comply with applicable labeling and testing requirements for OTC sunscreens in 21 CFR § 201.327, with limited exceptions.

### B. Adulterated or Misbranded Products

23.     Federal regulations make clear that Sunscreen Manufacturers are bound by certain sections of the Food, Drug & Cosmetic Act and that just like pharmaceutical drugs, it is unlawful to manufacture or introduce into interstate commerce Sunscreen Products that are adulterated or misbranded.[6]

24.     The manufacture and sale of any adulterated or misbranded drug (OTC or

---

[3] https://www.fda.gov/drugs/understanding-over-counter-medicines/questions-and-answers-fda-announces-new-requirements-over-counter-otc-sunscreen-products-marketed-us#Q1_Why_is_FDA.
[4] https://www.fda.gov/files/drugs/published/Enforcement-Policy----OTC--Sunscreen-Drug-Products-Marketed-Without-an-Approved-Application.pdf.
[5] https://www.fda.gov/files/drugs/published/Enforcement-Policy----OTC--Sunscreen-Drug-Products-Marketed-Without-an-Approved-Application.pdf
[6] 21 CFR 201.327(c), (g).

prescription) is prohibited under federal law,[7] as well as under analogous state laws.

25.    The introduction into commerce of any misbranded or adulterated or misbranded drug is similarly prohibited under federal law,[8] as well as under analogous state laws.

26.    Similarly, the receipt in interstate commerce of any adulterated or misbranded or drug is also unlawful under federal law,[9] as well as under analogous state laws.

27.    Among the ways a drug may be adulterated and/or misbranded are:

a.    "if it has been prepared, packed, or held under unsanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health;"[10]

b.    "if . . . the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice…as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess;"[11]

c.    "If it purports to be or is represented as a drug the name of which is recognized in an official compendium, and … its quality or purity falls below, the standard set forth in such compendium. …"[12]

d.    "If . . . any substance has been (1) mixed or packed therewith so as to reduce its quality or strength or (2) substituted wholly or in part therefor."[13]

28.    A drug is misbranded:

---

[7] 21 U.S.C. § 331(g).
[8] 21 U.S.C. § 331(a); 21 CFR 201.327(c), (g).
[9] 21 U.S.C. § 331(c).
[10] 21 U.S.C. § 351(a)(2)(A).
[11] 21 U.S.C. § 351(a)(2)(B).
[12] 21 U.S.C. § 351(b).
[13] 21 U.S.C. § 351(d).

a. "If its labeling is false or misleading in any particular."[14]

b. "If any word, statement, or other information required…to appear on the label or labeling is not prominently placed thereon…in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use."[15]

c. If the labeling does not contain, among other things, "the proportion of each active ingredient…"[16]

d. "Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings … against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users. …"[17]

e. "If it purports to be a drug the name of which is recognized in an official compendium, unless it is packaged and labeled as prescribed therein."[18]

f. "if it is an imitation of another drug;"[19]

g. "if it is offered for sale under the name of another drug."[20]

h. "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[21]

i. If the drug is advertised incorrectly in any manner;[22] or

---

[14] 21 U.S.C. § 352(a)(1).
[15] 21 U.S.C. § 352(c).
[16] 21 U.S.C. § 352(e)(1)(A)(ii)
[17] 21 U.S.C. § 352(f).
[18] 21 U.S.C. § 352(g).
[19] 21 U.S.C. § 352(i)(2).
[20] 21 U.S.C. § 352(i)(3).
[21] 21 U.S.C. § 352(j).
[22] 21 U.S.C. § 352(n).

j.  If the drug's "packaging or labeling is in violation of an applicable regulation…"[23]

29.  Various state statutory and common law regimes expressly or impliedly adopt or parallel the aforementioned federal provisions.

30.  As articulated in this Complaint, Defendants' unapproved OTC Sunscreen Products were adulterated and/or misbranded per the foregoing, as described more fully below.

### C.  **About Benzene**

31.  Benzene is classified as a human carcinogen.[24]

32.  "Benzene works by causing cells not to work correctly. For example, it can cause bone marrow not to produce enough red blood cells, which can lead to anemia. Also, it can damage the immune system by changing blood levels of antibodies and causing the loss of white blood cells."[25]

33.  Benzene exposure can occur through inhalation, skin contact, ingestion, or from contact with the eyes.[26]

34.  Persons exposed to Benzene in an occupational setting is encouraged by the CDC to remove their clothing, seal the clothes, and present the clothing to the CDC for proper disposal.[27]

35.  Individuals exposed to Benzene are also told to "rapidly wash your entire body with soap and water, and get medical care as quickly as possible."[28]

36.  Since at least 1988, the US Department of Health and Human Services and OSHA has imposed a 1 part per million (ppm) limit in air as a time-weighted average concentration over

---

[23] 21 U.S.C. § 352(p).
[24] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/johnson-johnson-consumer-inc-issues-voluntary-recall-specific-neutrogenar-and-aveeno-aerosol.
[25] https://emergency.cdc.gov/agent/benzene/basics/facts.asp.
[26] https://www.cdc.gov/niosh/npg/npgd0049.html.
[27] https://emergency.cdc.gov/agent/benzene/basics/facts.asp.
[28] https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

an 8-hour work shift, and a 5 ppm short-term exposure limit in any 15-minute sampling period.[29]

### D.  FDA Limits on Benzene in Consumer Products

37.     Ingredients in sunscreens absorb through the skin and can be found in the blood. While the FDA has not yet imposed limits on benzene in sunscreen, it recently imposed an interim limit of 2 parts per million in other consumer products (hand sanitizer).[30]

38.     The presence of any benzene, a known human carcinogen, in sunscreens is particularly troubling as it they are widely used by adults and children in repeatedly and in large volumes for the prevention of cancer.[31]   Because of the large total surface area of the skin, the application of sunscreen needed to cover the human body exposes people to excessively high levels of benzene in products which contain this contaminant.

### E.  Levels of Benzene in Defendants' Sunscreen and/or After-Sun Products

39.     A manufacturer is required to give adequate directions for the use of a pharmaceutical drug such that a "layman can use a drug safely and for the purposes for which it is intended,"[32] and conform to requirements governing the appearance of the label.[33]

40.      "Labeling" encompasses all written, printed or graphic material accompanying the drug or device.[34]

41.     If a manufacturer labels a drug but omits or misstates ingredients, that renders the drug misbranded.[35]

42.     On May 24, 2021, Valisure, an independent pharmacy submitted a Citizen Petition

---

[29] https://www.cdc.gov/niosh/docs/81-123/pdfs/0049.pdf.
[30] https://www.bloomberg.com/news/articles/2021-07-14/j-j-to-pull-some-spray-sunscreen-from-market-on-benzene-concerns.

[32] 21 C.F.R. § 201.5.
[33] 21 C.F.R. § 801.15.
[34] Id. 65 Fed. Reg. 14286 (March 16, 2000).
[35] 21 C.F.R. § 201.6; 201.10.

to the FDA concerning its testing of various Sunscreen and After-Sun Care Products.

43.      Valisure is an "online pharmacy currently licensed in 38 states and an analytical laboratory that is ISO 17025 accredited by the International Organization for Standardization." Valisure also is registered with the Drug Enforcement Administration and the FDA.

44.      Valisure conducted its own independent testing of various Sunscreen and After-Sun products, including Defendants' Sunscreen Products.

45.      The tests conducted by Valisure show that Defendants' Sunscreen Products contain high levels of benzene that exceed 2 ppm.[36]

### F.   J&J's Recall

46.      On July 14, 2021, J&J announced a nationwide recall of Neutrogena and Aveeno Aerosol Sunscreen Products due to the presence of benzene.[37]

47.      Specifically, the recall covered the following products:

   a.   NEUTROGENA® Beach Defense® aerosol sunscreen,

   b.   NEUTROGENA® Cool Dry Sport aerosol sunscreen,

   c.   NEUTROGENA® Invisible Daily™ defense aerosol sunscreen,

   d.   NEUTROGENA® Ultra Sheer® aerosol sunscreen, and

   e.   AVEENO® Protect + Refresh aerosol sunscreen.

48.      Customers were instructed to stop using the products immediately.

### G.   Each Defendant Had an Obligation to Test and Otherwise Ensure Its Sunscreen Products Did Not Contain Dangerous, Undisclosed Benzene Impurities

#### 1.   Manufacturer/Distributor Defendant(s) (J&J)

---

[36] https://www.valisure.com/wp-content/uploads/Valisure-Citizen-Petition-on-Benzene-in-Sunscreen-and-After-sun-Care-Products-v9.7.pdf.
[37] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/johnson-johnson-consumer-inc-issues-voluntary-recall-specific-neutrogenar-and-aveenor-aerosol.

49.     As a manufacturer or distributor of a drug and/or cosmetic, Defendants had a duty to ensure that their Sunscreen Products did not contain benzene impurities.

50.     Defendants had a duty to ensure that their Sunscreen Products did not contain any benzene impurities, consistent with the FDA-approved labeling for any of their Sunscreen Products.

51.     Defendants did not disclose to Plaintiff, consumers, or otherwise that any of its Sunscreen Products contained *any* amount of benzene or that they contained benzene far in excess of the interim limit set by the FDA.

52.     Upon information and belief, Defendants did not take reasonable steps to test or otherwise assure that its Sunscreen Products either did not contain any benzene or did not contain benzene in excess of 2 ppm.  Had Defendants done so, they would have discovered, as Valisure was able to discover, that its products contained benzene at levels in excess of 2 ppm.

53.     Defendants represented and warranted to its customers, consumers, and the public in general that its Sunscreen Products were of merchantable quality and complied with federal and analogous state law, and did not contain undisclosed impurities such as benzene.

### 2.   Retailer Defendant (Costco)

54.     As a retail seller of an OTC product, Costco had a duty to ensure that the Sunscreen Products they sourced and in turn sold to consumers did not contain benzene impurities.

55.     As a retail seller of an OTC product, Costco also had a duty not to sell products that were adulterated or misbranded.

56.     Costco did not disclose to Plaintiff, consumers, or otherwise that  any of its Sunscreen Products contained *any* amount of benzene or contained benzene far in excess of the interim limit set by the FDA.

57.     Upon information and belief, Costco did not take reasonable steps to test – either

itself or requesting that its supplier test – or otherwise assure that its Sunscreen Products either did not contain any benzene.  Had Costco done so, they would have discovered, as Valisure was able to discover, that its products contained benzene at unacceptable levels.

58.     Costco represented and warranted to its customers, consumers, and the public in general that its Sunscreen Products were of merchantable quality and complied with federal and analogous state law, and did not contain undisclosed impurities such as benzene.

### H.  Plaintiff's Experience

59.     In or around April 2021, Plaintiff purchased Defendants' Sunscreen Products at Costco in Georgia.

60.     Specifically, Plaintiff purchased for personal or household use Neutrogena Beach Defense Sunscreen Product(s).

61.     Neither the products' label, nor anything else published by J&J, disclosed that the product contained benzene, let alone at excessive levels.

62.     Plaintiff relied on the representations and statements in the product label or otherwise in purchasing these Sunscreen Products.  Plaintiff would not have purchased them had he known that they contained benzene.

### I.  Fraudulent Concealment, Tolling, and Continuing Violations

63.     Plaintiff and other class members' causes of action could not and did not accrue until the date of J&J's recall on July 14, 2021.

64.     Plaintiff and other class members exercised reasonable diligence but could not discover Defendants' wrongful conduct prior to J&J's recall.

65.     For instance, no Defendant revealed to the public that their Sunscreen Product contained benzene or the levels of benzene, or that the products were adulterated, misbranded, and/or unapproved.

66.     To the contrary, each Defendant continued to represent and warrant that their

Sunscreen Products were merchantable, fit for their intended purpose, and were of the quality and composition as marketed.

67.     Because of this, Plaintiff and other class members did not discover, nor could they have discovered through reasonable and ordinarily diligence, each Defendant's deceptive, fraudulent, and unlawful conduct alleged herein. Defendants' false and misleading explanations, or obfuscations, lulled Plaintiff and other class members into believing that the prices paid for Sunscreen Products were appropriate for what they believed to be non-adulterated or -non-misbranded drugs despite their exercise of reasonable and ordinary diligence.

68.     Alternatively, any statute of limitation or prescriptive period is equitably tolled on account of fraudulent concealment. Defendants each affirmatively concealed from Plaintiff and other class members their unlawful conduct. Each Defendant affirmatively strove to avoid disclosing their knowledge or the true nature of their Sunscreen Products, and the fact that those products were adulterated, misbranded, and/or contained benzene at all or above the FDA's interim limits.

69.     As a result of each Defendant's affirmative and other acts of concealment, any applicable statute of limitations affecting the rights of Plaintiff or other class members has been tolled.  Plaintiff and/or other class members exercised reasonable diligence by among other things promptly investigating and bringing the allegations contained herein.  Despite these or other efforts, Plaintiff were unable to discover, and could not have discovered, the unlawful conduct alleged herein at the time it occurred or at an earlier time so as to enable this complaint to be filed sooner.

70.     Additionally, the revelations revealed by Valisure's Citizen Petition and J&J's subsequent recall may be only the tip of the iceberg.  Because of Defendants' and non-parties'

ongoing fraud and deception, the full scope of Defendants' and non-parties' unlawful conduct is not yet known.

## V.   <u>CLASS ACTION ALLEGATIONS</u>

71.     Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) against Defendants on Plaintiff's own behalf and on behalf of the Nationwide Class(es) defined below:

> All individuals and entities in the United States and its territories and possessions who, since at least January 1, 2015 to the present, paid any amount of money for a Sunscreen Product (intended for personal or household use) that was manufactured, distributed, or sold by any Defendant.

72.     Plaintiff also alleges the following Georgia Subclass:

> All individuals and entities in Georgia and its territories and possessions who, since at least January 1, 2015 to the present, paid any amount of money for a Sunscreen Product (intended for personal or household use) that was manufactured, distributed, or sold by any Defendant.

73.     Excluded from the Class(es)es are: (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendants and their employees, officers, directors, and agents; (c) Defendants' legal representatives, assigns and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

74.     Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

75.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class(es).

76.     **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially millions of consumers nationwide. The Class(es)es are therefore so numerous that joinder of all members is impracticable.

77.   **Commonality**:  Common questions of law and fact exist as to all class members, including but not limited to:

a.   Whether each Defendant made express or implied warranties to Plaintiff and other class members regarding their Sunscreen Products;

b.   Whether each Defendant's Sunscreen [and/or After-Sun]  Products were adulterated, misbranded, or otherwise contained undisclosed benzene impurities, and the levels of such impurities;

c.   Whether Defendant violated cGMPs regarding the manufacture, sourcing, or testing of their Sunscreen Products;

d.   Whether each Defendant falsely claimed that its Sunscreen Products were merchantable, fit for intended purposes, and otherwise of the quality and composition represented;

e.   Whether each Defendant affirmatively or negligently misrepresented or omitted facts regarding its manufacture, sale, or testing of its Sunscreen Products;

f.   Whether Plaintiff and other class members have been injured as a result of each Defendant's unlawful conduct, and the amount of their damages;

g.   Whether a common damages model can calculate damages on a class-wide basis;

h.   When Plaintiff's and other class members' causes of action accrued; and

i.   Whether Defendants fraudulently concealed Plaintiff's and other class member's causes of action.

78.   **Typicality**:  Plaintiff's claims are typical of other class members' claims. Plaintiff and other class members all suffered the same type of economic harm.  Plaintiff has substantially the same interest in this matter as all other class members, and their claims arise out of the same set of facts and conduct as the claims of all other class members.

79.     **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and have retained competent counsel experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation. Accordingly, Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of other class members. Plaintiff' claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiff has no disabling conflicts with other class members and will fairly and adequately represent the interests of class members.

80.     The elements of Rule 23(b)(2) are met. Defendants have acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class(es) as a whole.

81.     The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  Although many other class members have claims against Defendants, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiff's counsel, highly experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## FIRST CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTIES

82.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth

herein.

83.    This cause of action is alleged on behalf of all class members against all Defendants.

84.    Plaintiff, and each member of the Class(es), formed a contract with Defendants at the time Plaintiff and the other Class(es) members purchased Sunscreen Products. The terms of the contract include the promises and affirmations of fact made by Defendants on the Sunscreen Products' packaging and through marketing and advertising, including that the product would be of the quality and character as represented.  This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Class(es) and Defendants.

85.    Each Defendant expressly warranted that its Sunscreen Products were fit for its ordinary use, i.e., as an FDA-approved OTC drug, were safe and effective for intended use, and did not contain any undisclosed impurities.

86.    Each Defendant sold Sunscreen Products that they expressly warranted were compliant with cGMPs and not adulterated or misbranded, or otherwise contained undisclosed levels of benzene or other impurities.

87.    Each Defendant's Sunscreen Products did not conform to each Defendant's express representations and warranties because the product was not manufactured in compliance with cGMPs and was adulterated and misbranded, or contained undisclosed impurities.

88.    At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose:  Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313;  Ark. Code. Ann. § 4-2-313;  Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313;  Conn. Gen. Stat. Ann. § 42a-2-313;  6 Del. Code. § 2-313;  D.C. Code.

§ 28:2-313;  Fla. Stat. Ann. § 672.313;  Ga. Code. Ann. § 11-2-313;  Haw. Rev. Stat. § 490:2-313;  Idaho Code § 28-2-313;  810 Ill. Comp. Stat. Ann. 5/2-313;  Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313;  Ky. Rev. Stat. Ann. § 355.2-313;  11 Me. Rev. Stat. Ann. § 2-313;  Md. Code. Ann. § 2-313;  Mass. Gen. Law Ch. 106 § 2-313;  Mich. Comp. Laws Ann. § 440.2313;  Minn. Stat. Ann. § 336.2-313;  Miss. Code Ann. § 75-2-313;  Mo. Rev. Stat. § 400.2-313;  Mont. Code Ann. § 30-2-313;  Nev. Rev. Stat. U.C.C. § 104.2313;  N.H. Rev. Ann. § 382-A:2-313;  N.J. Stat. Ann. § 12A:2-313;  N.M. Stat. Ann. § 55-2-313;  N.Y. U.C.C. Law § 2-313;  N.C. Gen. Stat. Ann. § 25-2-313;  N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26;  Okla. Stat. tit. 12A § 2-313;  Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, *et seq.*; R.I. Gen. Laws § 6A-2-313;  S.C. Code Ann. § 36-2-313;  S.D. Stat. § 57A-2-313;  Tenn. Code Ann. § 47-2-313;  Tex. Bus. & Com. Code Ann. § 2-313;   Utah Code Ann. § 70A-2-313;  Va. Code § 8.2-313;  Vt. Stat. Ann. 9A § 2-313;  W. Va. Code § 46-2-313;  Wash. Rev. Code § 62A 2-313;  Wis. Stat. Ann. § 402.313 and Wyo. Stat. § 34.1-2-313.

89.    At the time that each Defendant marketed and sold its Sunscreen Products, they recognized the purposes for which the products would be used, and expressly warranted the products were cGMP-compliant and not adulterated or misbranded, or did not contain undisclosed impurities.  These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and other class members including but not limited to express representations made in referring to their products as FDA-compliant (and compliant with analogous state law).

90.    Each Defendant breached its express warranties with respect to its Sunscreen Products as they were not of merchantable quality, were not fit for their ordinary purpose, and did not comply with cGMP and was adulterated and misbranded, or contained undisclosed impurities.

91.    Plaintiff and each member of the Class(es) would not have purchased the Sunscreen Products dad they known these drugs contained undisclosed benzene impurities, were adulterated

or misbranded, or did not have the represented safety and efficacy profile.

92.     As a direct and proximate result of each Defendant's breach of warranty, Plaintiff and other class members have been injured and suffered damages in the amount of the purchase price of their medications, the purchase price of any replacement medications, and any consequential damages resulting from the purchases, in that the Sunscreen Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS

93.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

94.     This cause of action is alleged on behalf of all class members against all Defendants.

95.     At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability and fitness for ordinary purpose:  Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314;  Ark. Code. Ann. § 4-2-314;  Cal. Com. Code § 2314;  Colo. Rev. Stat. § 4-2-314;  Conn. Gen. Stat. Ann. § 42a-2-314;  6 Del. Code. § 2-314; D.C. Code. § 28:2-314;  Fla. Stat. Ann. § 672.314;  Ga. Code. Ann. § 11-2-314;  Haw. Rev. Stat. § 490:2-314;  Idaho Code § 28-2-314;  810 Ill. Comp. Stat. Ann. 5/2-314;  Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314;  La. Civ. Code Ann. Art. § 2520;  11 Me. Rev. Stat. Ann. § 2-314;  Md. Code. Ann. § 2-314;  Mass. Gen. Law Ch. 106 § 2-314;  Mich. Comp. Laws Ann. § 440.2314;  Minn. Stat. Ann. § 336.2-314;  Miss. Code Ann. § 75-2-314;  Mo. Rev. Stat. § 400.2-314;  Mont. Code Ann. § 30-2-314;  Nev. Rev. Stat. U.C.C. § 104.2314;  N.H. Rev. Ann. § 382-A:2-314;  N.J. Stat. Ann. § 12A:2-314;  N.M. Stat. Ann. § 55-2-314;  N.Y. U.C.C. Law § 2-314;

N.C. Gen. Stat. Ann. § 25-2-314;  N.D. Stat. § 41-02-314;  Ohio Rev. Code Ann. § 1302.27;  Okla. Stat. tit. 12A § 2-314;  Or. Rev. Stat. § 72.3140;  13 Pa. C.S. § 2314;  P.R. Laws. Ann. Tit. 31, § 3841, *et seq*.; R.I. Gen. Laws § 6A-2-314;  S.C. Code Ann. § 36-2-314;  S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314;  Tex. Bus. & Com. Code Ann. § 2-314;   Utah Code Ann. § 70A-2-314;  Va. Code § 8.2-314;  Vt. Stat. Ann. 9A § 2-314;  W. Va. Code § 46-2-314;  Wash. Rev. Code § 62A 2-314;  Wis. Stat. Ann. § 402.314 and Wyo. Stat. § 34.1-2-314.

96.     Each Defendant was a merchant within the meaning of the above statutes.

97.     Each Defendant's Hand Sunscreen constituted "goods" or the equivalent within the meaning of the above statutes.

98.     Each Defendant was obligated to provide Plaintiff and other class members reasonably fit Sunscreen Products for the purpose for which the product was sold, and to conform to the standards of the trade in which Defendants are involved such that the product was of fit and merchantable quality.

99.     Each Defendant knew or should have known that its Sunscreen Products were being manufactured and sold for the intended purpose, and impliedly warranted that their Sunscreen Products were of merchantable quality and fit for that purpose.

100.     Each Defendant breached its implied warranty because each Defendant's Sunscreen Products were not of merchantable quality, nor fit for the product's ordinary purpose, and did not conform to the standards generally applicable to such goods.

101.     Plaintiff and other class members purchased the Sunscreen Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

102.     The Sunscreen Products were not altered by Plaintiff or other class members.

103.     As a direct and proximate result of each Defendant's breach of implied warranty, Plaintiff and other class members have been injured and suffered damages, in that Defendants'

Sunscreen Products they purchased was so inherently flawed, unfit, or unmerchantable as to have significantly diminished or no intrinsic market value.

### THIRD CAUSE OF ACTION
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *ET SEQ.*

104.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

105.   This cause of action is alleged on behalf of all class members against all Defendants.

106.   Each Defendant is a "warrantor" within the meaning of the Magnuson-Moss Warranty Act.

107.   Plaintiff and other class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act.

108.   Each Defendant expressly or impliedly warranted their Sunscreen Products as alleged in the First and Second Causes of Action.

109.   Under 15 U.S.C. § 2310(d)(1), Plaintiff and other class members were "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Plaintiff sues pursuant to this section to recover money damages and for legal and equitable relief on behalf of themself and the class members.

110.   No Defendant has acted on the opportunity to cure its failure with respected to its warranted Sunscreen Products.

111.   Likewise, pursuant to 15 U.S.C. § 2310(d)(2), upon prevailing in this action, Plaintiff is entitled to receive an award of attorneys' fees and expenses and pray for the same.

## FOURTH CAUSE OF ACTION
## FRAUD (AFFIRMATIVE MISREPRESENTATION, OMISSION, AND CONCEALMENT)

112.    Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

113.    This cause of action is alleged on behalf of consumer class members against all Defendants.

114.    Defendants affirmatively misrepresented material facts including, *inter alia*, that their Sunscreen Products with not compliant with cGMPs and/or were not adulterated and/or misbranded, or did not contain undisclosed benzene impurities.

115.    Defendants omitted material facts including, *inter alia*, that their Sunscreen Products with not compliant with cGMPs and/or were not adulterated and/or misbranded, or contained undisclosed benzene impurities.

116.    Defendants' actions had the effect of fraudulently inducing customers to pay in whole or in part for Defendants' Sunscreen Products – products which Defendants knew or should have known were did not comply with GMPs and/or were adulterated and/or misbranded, or contained undisclosed benzene impurities. Plaintiff and other class members would not have purchased Defendants' Sunscreen Products had they known the truth. Indeed, Plaintiff and other class members could not have paid for Defendants' Sunscreen Products had they known the truth because Defendants' Sunscreen Products were illegally manufactured, illegally distributed, and illegally sold to Plaintiff and class members based on Defendants' fraudulent misrepresentations and omissions.

117.    Defendants knew, or reasonably should have known, that their misrepresentations were materially false or misleading, or that the omission of material facts rendered such representations false or misleading.

118.    Defendants also knew, or had reason to know, that their misrepresentations and omissions would induce Class(es) members to pay for some or all of the cost of Defendants' Sunscreen Products.

119.    Defendants' misrepresentations and omissions were material.

120.    Defendants' actively concealed their misrepresentations and omissions from the Class(es), government regulators, and the public.

121.    To the extent applicable, Defendants intended their misrepresentations and omissions to induce Plaintiff and other class members to pay for Defendants' Sunscreen Products.

122.    But for these misrepresentations and omissions, Plaintiff and other class members would not have paid for Defendants' Sunscreen Products.

123.    To the extent applicable, Plaintiff and other class members were justified in relying on Defendants' misrepresentations and omissions.  The same or substantively identical misrepresentations and omissions were communicated, to each Class(es) member, including through product labeling and other statements by Defendants.  No reasonable consumer would have paid what they did for Defendants' Sunscreen Products but for Defendants' unlawful conduct. To the extent applicable, reliance may be presumed in these circumstances.

124.    Plaintiff and other class members were damaged by reason of Defendants' misrepresentations and omissions alleged herein.

### FIFTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION AND OMISSION
### (INDIVIDUALLY AND ON BEHALF OF CONSUMER CLASS MEMBERS
### AGAINST ALL DEFENDANTS)

125.    Plaintiff re-allege and incorporate the preceding paragraphs as if fully set forth herein.

126.    This cause of action is alleged on behalf of consumer class members against all Defendants.

127.    Each Defendant had or undertook a duty to accurately and truthfully represent to the quality, nature, and characteristics of its Sunscreen Products.

128.    Each Defendant failed to exercise ordinary care in making representations (or in failing to disclose facts) concerning the quality, nature, and characteristics of its Sunscreen Products.

129.    Each Defendant negligently misrepresented or omitted facts regarding the quality, nature, and characteristics of its Sunscreen Products.

130.    Each Defendant's statements were false at the time the misrepresentations were made (or at the time omissions were not made).

131.    Each Defendant knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omission of material facts rendered such representations false or misleading.  Each Defendant also knew, or had reason to know, that its misrepresentations and omissions would induce Class(es) members to make purchases of each Defendant's Sunscreen Products.

132.    As a direct and proximate result of each Defendant's acts and omissions described herein, Plaintiff and other class members have suffered harm, and will continue to do so.

133.    Each Defendant's misrepresentations or omissions were material and a substantial factor in Plaintiff' and other class members' paying for Sunscreen Products.

134.    Each Defendant intended its misrepresentations or omissions to induce Plaintiff and Class(es) members to make purchases of Sunscreen Products, or had reckless disregard for same.

135.    But for these misrepresentations (or omissions), Plaintiff and other class members would not have made purchases of Defendants' Sunscreen Products.

136.    Plaintiff and other class members were justified in relying on Defendants' misrepresentations or omissions.  The same or substantively identical misrepresentations were

communicated, and/or the same or substantively identical omissions were not communicated, to each Class(es) Member.

137.    Plaintiff and other class members were damaged by reason of each Defendant's misrepresentations or omissions alleged herein.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION LAWS**
**(INDIVIDUALLY AND ON BEHALF OF CONSUMER CLASS MEMBERS**
**AGAINST ALL DEFENDANTS)**

138.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

139.    This cause of action is alleged on behalf of all class members against all Defendants.

140.    Each Defendant has violated the consumer protection statutes as follows:

a.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

b.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

c.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, *et seq.*;

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

e.      Defendants have violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, *et seq.*;

f.      Defendants have violated the California Consumers Legal Remedies Act,

Cal. Civ. Code §§ 1750, *et seq.*;

g.    Defendants have violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

h.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

i.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

j.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*;

k.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq.*;

l.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

m.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, *et seq.*;

n.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

o.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

p.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, *et seq.*;

q.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

r.    Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Iowa Code Ann. § 714H, *et seq.*;

s.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

t.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

u.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

v.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*; Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

w.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

x.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

y.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

z.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

aa.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.0 10, *et seq.*;

bb.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

cc.   Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

dd.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

ee.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

ff.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

gg.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

hh.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

ii.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 350, et seq.;

jj.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

kk.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

ll.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

mm.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

nn.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

oo.    Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

pp.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq.*;

qq.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

rr.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

ss.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

tt.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

uu.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

vv.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*;

ww.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

xx.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*; Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

yy.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*;

zz.    Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*; and

aaa.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, *et seq.*, the applicable statute for the Commonwealth of Puerto Rico.

141.   Each Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

142.   Each Plaintiff and other Class(es) Member is a consumer or person aggrieved by Defendants' misconduct within the meaning of the above statutes.

143.   To the extent applicable, each Defendant knew, intended, or should have known that their fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances. As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and other class members have suffered damages– an ascertainable loss – in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION
### UNJUST ENRICHMENT

144.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

145.   This cause of action is alleged on behalf of all class members against all Defendants.

146.   As alleged herein, Defendants were unjustly enriched at the expense of Plaintiff and other class members by virtue of the latter's paying for Defendants' Sunscreen Products.

147.   Defendants profited immensely from introducing a carcinogen into the United States for human consumption. On top of that, because Defendants' Sunscreen Products were adulterated and misbranded, their distribution and sale in the United States was illegal.

148.   Plaintiff and other class members were unjustly deprived of money obtained by

Defendants as a result of the improper amounts paid for Defendants' Sunscreen Products.  It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation obtained from Plaintiff and other class members as a result of their wrongful conduct alleged in this Complaint.

149.    In the alternative to the other causes of actions alleged herein, Plaintiff and other class members have no adequate remedy at law.

150.    Plaintiff and other class members are entitled to seek and do seek restitution from Defendants as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendants by virtue of its wrongful conduct.

## EIGHTH CAUSE OF ACTION
### NEGLIGENCE

151.    Plaintiff re-allege and incorporate the preceding paragraphs as if fully set forth herein.

152.    This cause of action is alleged on behalf of all class members against all Defendants.

153.    Each Defendant owed a duty to Plaintiff and the Class(es) to use and exercise reasonable and due care in the manufacturing of its Sunscreen [and/or After-Sun]  Products.

154.    Each Defendant owed a duty to Plaintiff and the Class(es) to ensure that the Sunscreen Products it sold in the United States complied with cGMPs and were not adulterated or misbranded, or did not contain undisclosed benzene impurities.

155.    Each Defendant owed a duty to care to Plaintiff and the Class(es) because they were the foreseeable, reasonable, and probable user of Sunscreen Products and victim of each Defendant's fraudulent and deceptive activities.  Each Defendant knew, or should have known, that its Sunscreen Products did not comply with cGMPs and were adulterated and misbranded, or contained undisclosed benzene impurities, and each was in the best position to uncover and remedy

these shortcomings.

156.   Each Defendant failed to do this.   Each Defendant inadequately oversaw the manufacture or sale of its own Sunscreen Products.   Each Defendant knew that ignoring the manufacturing issues surrounding its Sunscreen Products would damage Plaintiff and the Class(es) and increase its own profits.

157.   Each Defendant maintained or should have maintained a special relationship with Plaintiff and the Class(es), as they were obligated to ensure that its Sunscreen Products complied with cGMPs and was not adulterated or misbranded, or did not contain undisclosed benzene impurities.

158.   Each Defendant's own actions and inactions created a foreseeable risk of harm to Plaintiff and the Class(es).   Each Defendant's misconduct included, but was not limited to, failing to oversee actions taken in the manufacture or sale of its Sunscreen Products.

159.   Each Defendant breached duties owed to Plaintiff and the Class(es) by failing to exercise reasonable care sufficient to protect the interests and meet the needs of Plaintiff and the Class(es).

160.   As a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the Class(es) has suffered injury and are entitled to damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION
## NEGLIGENCE PER SE

161.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

162.   This cause of action is alleged on behalf of all class members against all Defendants.

163.   Each Defendant owed a duty to Plaintiff and the Class(es) to use and exercise reasonable and due care in the manufacturing of its Sunscreen Products.

164.    Each Defendant owed a duty to Plaintiff and the Class(es) to ensure that the Sunscreen Products it sold in the United States complied with cGMPs and were not adulterated or misbranded, or did not contain undisclosed benzene impurities.

165.    Each Defendant owed a duty to Plaintiff and the Class(es) because each state, territory, and possession has adopted /or adheres to federal cGMP and adulteration standards.

166.    Each Defendant failed to comply with federal cGMPs and federal adulteration standards.

167.    As a result of each Defendant's failures to do so, each Defendant's own actions and inactions created a foreseeable risk of harm to Plaintiff and the Class(es).

168.    As a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the Class(es) have suffered injury and are entitled to damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray for the following judgment:

A.      An order certifying this action as a class action;

B.      An order appointing Plaintiff as Class(es) Representative, and appointing undersigned counsel as Class(es) Counsel to represent the Class(es);

C.      A declaration that Defendants are liable pursuant to each and every one of the above-enumerated causes of action;

D.      An order awarding appropriate preliminary and/or final injunctive relief against the conduct of Defendants described herein;

E.      Payment to Plaintiff and class members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the full amounts paid or

reimbursed for Sunscreen Products; the costs to replace or Sunscreen Products; Defendants' ill-gotten gains; and/or the increases in the amounts paid for non-adulterated, non-misbranded, Sunscreen Products;

F.      An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

G.      An award of statutory penalties to the extent available;

H.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

I.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all causes of action so triable.

Dated: July 15, 2021                                    Respectfully Submitted,


*/s/ Marlene J. Goldenberg*                             */s/ David J. Stanoch*
Marlene J. Goldenberg (*pro hac vice* to be filed)      David J. Stanoch (NJ Bar No. 012902003)
Noah C. Lauricella (*pro hac vice* to be filed)         Allan Kanner (*pro hac vice* to be filed)
Goldenberg Law, PLLC                                    Conlee S. Whiteley (*pro hac vice* to be filed)
800 LaSalle Avenue, Ste. 2150                           Layne Hilton (*pro hac vice* to be filed)
Minneapolis, MN 55402                                   KANNER & WHITELEY, LLC
(612) 436-5028                                          701 Camp Street
mjgoldenberg@goldenberglaw.com                          New Orleans, LA 70130
nlauricella@goldenberglaw.com                            (504)-524-5777
                                                        d.stanoch@kanner-law.com
                                                        a.kanner@kanner-law.com
                                                        c.whiteley@kanner-law.com
                                                        l.hilton@kanner-law.com